Slip Op. 11-55

UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: Nicholas Tsoucalas, Senior Judge**

| | |
|---|---|
| MID CONTINENT NAIL CORPORATION, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| UNITED STATES, | : |
| | : Court No.: 10-00247 |
| Defendant, | : |
| | : |
| and | : |
| | : |
| TARGET CORPORATION, | : |
| | : |
| Defendant-Intervenor. | : |
| | : |

<u>OPINION</u>

**Held:** Plaintiff's Motion for Judgment on the Agency Record is granted because the Final Scope Ruling issued by the Department of Commerce was not supported by substantial evidence and is not in accord with the law.

Dated: May 17, 2011

<u>Wiley Rein, LLP</u>, (<u>Adam H. Gordon</u>, <u>Lori E. Scheetz</u>, <u>Robert E. DeFrancesco, III</u>) for Mid Continent Nail Corporation, Plaintiff.

<u>Tony West</u>, Assistant Attorney General; <u>Jeanne E. Davidson</u>, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, <u>Patricia M. McCarthy</u>, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, (<u>David D'Alessandris</u>); <u>Brian Soiset</u>, Office of Chief Counsel for Import Administration, United States Department of Commerce, Of Counsel, for the United States, Defendant.

<u>Jochum, Shore, & Trossevin, PC</u>, (<u>Marguerite E. Trossevin</u> and <u>James J. Jochum</u>) for Target Corporation, Defendant-Intervenor

**TSOUCALAS, Senior Judge:** This matter comes before the Court upon the Motion for Judgment on the Agency Record filed by Plaintiff,

Mid Continent Nail Corporation ("Mid Continent Nail") on November 23, 2010 pursuant to Rule 56.2 of the Rules of the United States Court of International Trade. Mid Continent Nail challenges a determination by the United States Department of Commerce ("Commerce") that steel nails imported as components of household tool kits fall outside the scope of an antidumping duty order on certain steel nails from the People's Republic of China ("PRC"). <u>See Final Scope Ruling - Certain Steel Nails from the People's Republic of China ("PRC"), Request by Target Corporation</u> (Aug. 10, 2010), Public Rec. 27, ("<u>Final Scope Ruling</u>").[1] Mid Continent Nail argues that the <u>Final Scope Ruling</u> is not supported by substantial evidence and is otherwise not in accord with law primarily because its analysis focused on the household tool kits rather than the steel nails contained therein. Additionally, Mid Continent Nail asserts that Commerce failed to properly conduct the analysis required in scope inquiries under 19 C.F.R. § 351.225, and seeks a remand of this matter for further proceedings. Defendant, United States ("Government"), and Defendant-Intervenor, Target Corporation ("Target"), oppose remand of this matter arguing that Commerce conducted a sufficient scope analysis, and that its determination was supported by substantial evidence and otherwise in accord with the law.

---

[1] Hereinafter all documents in the public record will be designated "PR" and all documents in the confidential record designated "CR."

For the reasons set forth below, the Court finds that Commerce's determination was unsupported by substantial evidence and not in accord with the law and remands this matter for proceedings consistent with this opinion.

## BACKGROUND

On August 1, 2008, Commerce issued an order imposing an antidumping duty on steel nails from the PRC.  See Notice of Antidumping Duty Order: Certain Steel Nails from the People's Republic of China, 73 Fed. Reg. 44,961 (Aug. 1, 2008)("Final Order"). The scope of the merchandise covered by the Final Order is as follows:

> The merchandise covered by this proceeding includes
> certain steel nails having a shaft length up to 12
> inches.  Certain steel nails include, but are not limited
> to, nails made of round wire and nails that are cut.
> Certain steel nails may be of one piece construction or
> constructed of two or more pieces.  Certain steel nails
> may be produced from any type of steel, and have a
> variety of finishes, heads, shanks, point types, shaft
> lengths and shaft diameters.  Finishes include, but are
> not limited to, coating in vinyl, zinc (galvanized,
> whether by electroplating or hot-dipping one or more
> times), phosphate cement, and paint.  Head styles
> include, but are not limited to, flat, projection,
> cupped, oval, brad, headless, double, countersunk, and
> sinker.  Shank styles include, but are not limited to,
> smooth, barbed, screw threaded, ring shank and fluted
> shank styles.  Screw-threaded nails subject to this
> proceeding are driven using direct force and not by
> turning the fastener using a tool that engages with the
> head.  Point styles include, but are not limited to,
> diamond, blunt, needle, chisel, and no point.  Finished
> nails may be sold in bulk, or they may be collated into
> strips or coils using materials such as plastic, paper,
> or wire.  Certain steel nails subject to this proceeding
> are currently classified under the Harmonized Tariff
> Schedule of the United States ("HSTUS") subheadings
> 7317.00.55, 7317.00.65 and 7317.00.75.

Excluded from the scope of this proceeding are roofing nails of all lengths and diameter, whether collated or in bulk, and whether or not galvanized. Steel roofing nails are specifically enumerated and identified in ASTM Standard F 1667 (2005 revision) as Type I, Style 20 nails. Also excluded from the scope of this proceeding are corrugated nails. A corrugated nail is made of a small strip of corrugated steel with sharp points on one side. Also excluded from the scope of this proceeding are fasteners suitable for use in powder-actuated hand tools, not threaded and threaded, which are currently classified under HTSUS 7317.00.20 and 7317.00.30. Also excluded from the scope of this proceedings are thumb tacks, which are currently classified HTSUS 7317.00.10.00. Also excluded from the scope of this proceeding are certain brads and finish nails that are equal to or less than 0.0720 inches in shank diameter, round or rectangular in cross section, between 0.375 inches and 2.5 inches in length, and that are collated with adhesive or polyester film tape backed with a heat seal adhesive. Also excluded from the scope of this proceeding are fasteners having a case hardness greater than or equal to 50 HRC, a carbon content greater than or equal to 0.5 percent, a round head, a secondary reduced-diameter raised head section, a centered shank, and a smooth symmetrical point, suitable for use in gas-actuated hand tools.

While the HTSUS subheadings are provided for convenience and customs purposes, the written description of the scope of this investigation is dispositive.

Final Order, 73 Fed. Reg. at 44,961 - 44,962.[2]

Target imports household tool kits from the PRC. The tool kits contain tools such as hammers, measuring tapes, screwdrivers, and wrenches. See Letter from Jochum, Shore & Trossevin to the Secretary of Commerce, Re: Certain Steel Nails from the People's Republic of China: Scope Ruling Request Regarding Household Tool

---

[2] This scope language is substantially similar to the scope language that was proposed in the antidumping petition. Final Scope Ruling at 5.

Kits (Dec. 11, 2009) ("Scope Ruling Request" or "Request"), PR 1 at
2-3, CR 1 at 2-3. Of relevance to this matter, the tool kits also
include a plastic container holding approximately fifty one-inch
brass coated steel nails.  Id. at 2-3, 6.  On December 11, 2009,
Target requested a ruling from Commerce that these tool kits are
outside the scope of the Final Order.

      In making its Request, Target conceded that if the nails
contained in the tool kits were considered on their own they would
be subject to the Final Order.  Scope Ruling Request at 5.  It
argued, however, that Commerce should focus its scope analysis not
on the nails alone, but on the entire tool kit.  Target based this
argument, first, on the Final Order's silence regarding coverage of
nails packaged with non-subject items.  Second, Target relied on
prior scope rulings that considered items containing both subject
and non-subject goods, otherwise known as "mixed-media" items or
sets.  See Government's Mem. in Opp'n to Pl.'s  Mot. for J. upon
the Agency R. ("Gov.'s Opp'n") at 10.  In these earlier rulings,
Commerce focused its scope inquiry on the mixed-media item rather
than the subject good contained within it because the subject good
was a minor component of the mixed-media item, consumable, and
easily replaced with non-subject merchandise.  Scope Ruling Request
at 5.

      Target stated that when using the approach enunciated in these
prior scope rulings, Commerce subjected the mixed-media item to

analysis under the factors set forth in 19 C.F.R. § 351.225(k)(2)[3]

("(k)(2) factors"). Addressing each of the (k)(2) factors in turn,

Target argued that the physical characteristics, advertising and

display methods, purchaser expectations, ultimate use, and

different channels of trade in which subject nails and the tool

kits are sold show that the tool kits are distinct enough from

subject nails to be outside the scope of the Final Order.

Mid Continent Nail, a domestic manufacturer of nails and

original petitioner in the antidumping proceedings, see Final

Order, 73 Fed. Reg. at 44,962 n. 3, opposed Target's Scope Ruling

---

[3] In relevant part, 19 C.F.R. § 351.225(k) provides as
follows:

**(k)** . . . [I]n considering whether a particular product is
included within the scope of an order . . ., the Secretary
will take into account the following:

**(1)** The descriptions of the merchandise contained in the
petition, the initial investigation, and the
determinations of the Secretary (including prior scope
determinations) and the Commission.

**(2)** When the above criteria are not dispositive, the
Secretary will further consider:
(i) The physical characteristics of the product;
(ii) The expectations of the ultimate purchasers;
(iii) The ultimate use of the product;
(iv) The channels of trade in which the product is
sold; and
(v) The manner in which the product is advertised
and displayed.

19 C.F.R. § 351.225(k)(1)-(2) (2010). The (k)(2) factors are
also known as the Diversified Products factors because prior to
codification, they were recognized by this court in Diversified
Products Corp. v. United States, 6 CIT 155, 162, 572 F. Supp.
883, 889 (1983).

Request.  See Letter from Wiley Rein to the Secretary of Commerce,
Re: Certain Steel Nails from the People's Republic of China:
Opposition to Target Corporation's Request to Exclude Steel Nails
Packaged With Non-Subject Merchandise From the Scope of This Order
(Dec. 22, 2009), PR 2.  Mid Continent Nail argued that it is
impermissible to bypass the factors set forth in 19 C.F.R. §
351.225(k)(1) ("(k)(1) factors") and begin with the (k)(2) factors,
as advocated by Target.  Proper adherence to case precedent and
weighing of the sources identified by the (k)(1) factors, Mid
Continent Nail continued, would show that steel nails imported in
mixed-media sets remain subject to the Final Order despite being
packaged with non-subject items.

    Mid Continent Nail first pointed to the scope language of the
Final Order itself.  It argued that the Final Order's silence
regarding nails packaged in tool kits was irrelevant to the nails'
inclusion because the Final Order clearly includes all steel nails
matching a broad physical description unless those nails fit within
an articulated exclusion.  PR 2 at 5-8.  As seen above, there are
six exclusions from the Final Order's scope: roofing nails,
corrugated nails, thumb tacks, small finishing nails, and certain
nails used in either powder- or gas-actuated tools.  See Final
Order, 73 Fed. Reg. at 44,961 - 44,962. The scope language excludes
no nails based on their packaging or inclusion in a mixed-media
set.  Mid Continent Nail also argued that prior scope ruling
precedent supported including subject nails within the scope even

though they were packaged in a set with non-subject goods.  PR 2 at
10-14.

Finally, Mid Continent Nail noted that during the antidumping
proceedings, Stanley Fastening Systems, LP ("Stanley"), an importer
of nail gun sets comprised of a nail gun, nails, and a carrying
case, sought a determination that the nails in its sets were
outside the scope langauge.  <u>See</u> PR 2 at 8-9, PR 6, Att. 1.  The
domestic manufacturers who filed the antidumping petition
("Petitioners") responded in opposition stating

> [T]hey intend and have always intended these proceedings
> to cover all certain steel nails exhibiting the physical
> characteristics described in the written scope
> description, whether imported alone or as part of a set
> of goods including non-scope merchandise.  To the extent
> the Department [of Commerce] wishes to add clarifying
> language to the written description of the scope
> concerning this matter, Petitioners have no objection.

<u>See</u> Letter from Kelley Drye Collier Shannon to the Secretary of
Commerce, Re: Certain Steel Nails from the People's Republic of
China (Aug. 9, 2007), PR 2, Ex. 3 at 6 ("Petitioners' Scope
Letter").  No objections were filed to the Petitioners' Scope
Letter; however, Commerce did not add the suggested clarifying
language to the <u>Final Order</u>.[4]

_____

[4]In <u>Certain Steel Nails from the People's Republic of China:
Preliminary Determination of Sales at Less Than Fair Value and
Partial Affirmative Determination of Critical Circumstances and
Postponement of Final Determination</u>, 73 Fed. Reg. 3928, 3929 n. 6
(Jan. 23, 2008), Commerce discussed Stanley's request, but noted
only that it decided not to modify the <u>Final Order</u>'s scope to
exclude certain trademarked items.  Commerce never addressed its
decision not to amend the scope to clarify whether nails meeting
the scope language's physical description remain subject even
                                              (continued...)

Commerce issued the Final Scope Ruling on August 10, 2010 excluding the steel nails contained in the tool kits.  First, Commerce stated that it had examined the (k)(1) factors and concluded that they were not dispositive as to whether the Final Order's scope applied to "brass coated steel nails in household tool kits."  Final Scope Ruling at 5.  Commerce proceeded to an analysis of the merchandise under the (k)(2) factors.  Id.  It commenced this analysis by stating that it had "examined each of the household tool kits as a set containing both brass coated nails and other items."  Id. (emphasis added).  As a basis for its decision to focus its examination in this manner, Commerce stated:

> While we acknowledge that Target's brass coated steel nails would meet the physical requirements of steel nails that fall within the scope of the Order if they were imported without any of the other tool kit components, we also take into consideration that they were imported in household tool kits containing non-subject merchandise. Thus, the proper focus of the analysis is on the nails as contained in the household tool kits.

Id.[5]

Based on its analysis of the (k)(2) factors, Commerce concluded that the six tool kits containing steel nails fall

---

[4](...continued)
when packaged with non-subject merchandise.

[5] Commerce's characterization of the particular products it examined varied throughout the Final Scope Ruling, e.g., "tool kits," id. at 7, "tool kits as a set containing both brass coated nails and other items," id. at 5, "nails as contained in the household tool kits."  Id.  However, it is clear from Commerce's analysis, and the fact that the nails on their own are subject to the Final Order, that upon deciding not to conduct an inquiry on the nails as advocated by Mid Continent Nail, Commerce conducted its inquiry on the tool kits as advocated by Target.

outside the scope of the <u>Final Order</u>.  Mid Continent Nail initiated

this action seeking review of Commerce's determination on August

25, 2010.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to

Section 516(a)(2)(B)(vi) of the Tariff Act of 1930, as amended, 19

U.S.C. § 1516a(a)(2)(B)(vi) (2006),[6] and 28 U.S.C. § 1581(c)

(2006).

## STANDARD OF REVIEW and LEGAL STANDARD

The Court will uphold a scope determination by Commerce unless

it is "unsupported by substantial evidence on the record, or

otherwise not in accord with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

Substantial evidence is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." <u>Huaiyin</u>

<u>Foreign Trade Corp. (30) v. United States</u>, 322 F.3d 1369, 1374

(Fed. Cir. 2003) (<u>quoting</u> <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197,

229 (1938)).  "The court gives significant deference to Commerce's

interpretation of its own orders, but a scope determination is not

in accordance with the law if it changes the scope of an order or

interprets an order in a manner contrary to the order's terms."

<u>Allegheny Bradford Corp. v. United States</u>, 28 CIT 830, 842, 342 F.

Supp. 2d 1172, 1183 (2004).  In other words, while Commerce "enjoys

---

[6] All further citations to the Tariff Act of 1930 are to the relevant provisions of Title 19 of the United States Code, 2006 edition.

substantial freedom to interpret and clarify its antidumping duty
orders . . . it may not change them." Ericsson GE Mobile Commc'ns,
Inc. v. United States, 60 F.3d 778, 782 (Fed. Cir. 1995); see also
Tak Fat Trading Co. v. United States, 396 F.3d 1378, 1382 (Fed.
Cir. 2005) ("The language of the order determines the scope of an
antidumping duty order.").

Notwithstanding this primacy, antidumping orders sometimes
employ general language when defining the scope of the merchandise
covered. See 19 C.F.R. § 351.225(a); see also Duferco Steel, Inc.
v. United States, 296 F.3d 1087, 1096 (Fed. Cir. 2002). This
general language can render  the order's scope ambiguous, and
interpretive aids become necessary. In these instances, Commerce
interprets the order pursuant to 19 C.F.R. § 351.225, the
regulation governing the initiation and prosecution of scope
inquiries. Section 351.225(d) directs Commerce to first utilize
the (k)(1) factors to determine whether a particular product falls
within the scope of the order at issue. When the (k)(1) factors
"are not dispositive" regarding an order's scope, Commerce is then
directed to consider the (k)(2) factors.      19 C.F.R. §
351.225(k)(2).

## ANALYSIS

As noted above, in the Final Scope Ruling Commerce analyzed
the tool kits containing steel nails under the (k)(2) factors after
determining that the (k)(1) sources were not dispositive. Final
Scope Ruling at 5. Commerce's entire (k)(1) analysis reads as

follows:

> Pursuant to 19 CFR 351.225(k)(1) and as stated above, the Department [of Commerce] first examined the descriptions of the merchandise contained in the petition, the determinations of the Secretary and the ITC, and the initial investigation in examining Target's scope request.  On March 18, 2010, we initiated a formal scope inquiry of Target's brass coated steel nails in household tool kits, finding that the descriptions of the merchandise contained in the petition, the determinations of the Secretary and ITC, and the initial investigation were not dispositive in this case.  Therefore, we have examined Target's brass coated steel nails in household tool kits pursuant to the criteria set forth in section 351.225(k)(2) of the Department's regulations to determine if they are covered by the scope of the <u>Order</u>.

<u>Final Scope Ruling</u> at 5.

This perfunctory recitation by Commerce failed to address several significant items that should have been considered before turning to the (k)(2) factors.  For example, Commerce failed to address the Petitioners' Scope Letter which made clear the Petitioners' intention that their proposed scope language would include subject goods packaged with non-subject items.  This failure alone renders the <u>Final Scope Ruling</u> unsupported by substantial evidence.  <u>See</u> <u>Allegheny Ludlum Corp. v. United States</u>, 24 CIT 452, 479, 112 F. Supp. 2d 1141, 1165 (2000) ("It is . . . well-established that Commerce's total failure to consider or discuss record evidence which, on its face, provides significant support for an alternative conclusion renders the Department's determination unsupported by substantial evidence.").

More significantly, it is clear that Commerce commenced its analysis with its focus already on the tool kits, and not the steel

nails.  Commerce never addressed in any substantive way, however,

its decision to examine the tool kits rather than the steel nails.[7]

It simply stated that the tool kits would be examined because the

nails were packaged therein with non-subject merchandise.   See

Final Scope Ruling at 5.    A more thorough explanation was

necessary.  See NMB Singapore Ltd. v. United States, 557 F.3d 1316,

1319 (Fed. Cir. 2009) ("Commerce must explain the basis for its

decisions; while its explanations do not have to be perfect, the

path of Commerce's decision must be reasonably discernable to a

reviewing court.").

     Properly addressing this issue is especially important in

mixed-media cases like this one because the scope inquiry steps set

forth above presuppose a "product" to which they are being applied.

If there is a dispute regarding what that product is, therefore,

resolving that dispute is one of the most important steps Commerce

makes during the inquiry.  Here, the decision to examine the tool

kits proved outcome determinative because there was universal

agreement that the nails considered on their own were subject to

the Final Order.  In deciding that its inquiry would focus on the

tool kits, Commerce addressed none of the parties' arguments on

this issue and did not expressly rely on the Final Order, prior

---

     [7] It is worth noting that Commerce was not required to focus
its inquiry on the tool kits simply because Target framed its
Request in that manner.  See Walgreen Co. of Deerfield v. United
States, 620 F.3d 1350, 1355 (Fed. Cir. 2010) (noting that such a
rule would allow importers to frame their scope ruling requests
in order to eliminate dispositive use of the (k)(1) factors).

scope rulings, or other basis.  A ruling from Commerce with such
infirmities will normally not be affirmed.  See USX Corp. v. United
States, 11 CIT 82, 88, 655 F. Supp. 487, 492 (1987) ("The court
cannot defer to a decision which is based on inadequate analysis or
reasoning.").  However, because the Final Order and its prior scope
rulings provide possible paths for Commerce's decision to examine
the tool kits, the Court takes up each in turn.

### 1.  The Final Order

Target and Mid Continent Nail are correct that the Final Order
is silent regarding coverage of nails packaged with non-subject
items.  However, this silence does not amount to an ambiguity.  The
Final Order gives a specific description of the broad range of
nails falling within its scope.  It continues by setting forth six
types of nails excluded from that scope.  None of these exclusions
turn on whether the nails are packaged with non-subject items, or
whether they are a minor part of the overall item in which they are
packaged.  The only conclusion warranted by the Final Order's
language, then, is that packaging does nothing to change the
scope's broad coverage of steel nails.

Target argues that this case "is not a packaging case,"
because it concerns unique products - tool kits.  See Target's
Resp. in Opp'n to Pl.'s R. 56.2 Mot. for J. upon the Agency R.
("Target's Opp'n) at 19.  It further states that Commerce alone can
determine whether the product presented for examination is a
separate item, unique from the subject good.  Id. (citing Walgreen,

620 F.3d at 1355).  First, Target overstates the unique nature of
the tool kits.  The tool kits are a collection of tools that will
be used by the consumer as tools, and nails that will be used by
the consumer as nails.  Second, while it is true that Commerce
defines the product under review when necessary, Walgreen is clear
that this determination must "take into account the unique language
of the Final Order" at issue in the case.  Walgreen, 620 F.3d at
1355.  Here, deciding that the nails' inclusion in tool kits
created a new product and ultimately excluding the nails from the
Final Order's scope was an unreasonable interpretation of the Final
Order.  By focusing its inquiry on the tool kits and excluding the
otherwise subject nails packaged therein, Commerce effectively
created a seventh exclusion to the Final Order, namely an exclusion
of steel nails packaged with non-subject items in tool kits.

    In so doing, Commerce ran afoul of the well-established
prohibition against altering scope language ex post facto.  See
Ericsson, 60 F.3d at 782.  If Commerce intended to exclude nails
imported as components of mixed-media sets from the scope of the
Final Order, the time to establish that exclusion was during the
antidumping investigation.  "It is the responsibility of the
agency, not those who initiated the proceedings, to determine the
scope of the final orders." Duferco, 296 F.3d at 1097.  Commerce
undertook this responsibility here, as it always does, with
informed input from those most knowledgeable and with the greatest
interest in the proceedings, namely industry members who

manufacture and import the nails in question.  Stanley's request regarding its nail gun sets, and the Petitioners' Scope Letter in response, put Commerce on notice that subject nails were likely to be imported with non-subject items, and that the Petitioners believed this fact irrelevant to whether those nails remained within the scope of the <u>Final Order</u>.  Resolution of this issue could easily have been provided for one way or the other in the <u>Final Order</u>.  Instead, Commerce issued a <u>Final Order</u> that encompasses a broad range of steel nails regardless of whether they are imported in mixed-media sets.  This unambiguous scope may not be changed now by means of the <u>Final Scope Ruling</u>.

The Government and Target argue that the tool kits at issue should not be automatically encompassed within the <u>Final Order</u>'s scope simply because the <u>Final Order</u> did not expressly exclude them.  <u>See</u> Gov.'s Opp'n at 13 (<u>citing</u> <u>Duferco</u>, 296 F.3d at 1096); Target's Opp'n at 18 n.11 (<u>citing</u> <u>Toys "R" Us v. United States</u>, 32 CIT __, __, Slip Op. 08-79 (July 16, 2008)(not published in the Federal Supplement)).  This argument, however, states the matter backwards.  The tool kits are important not because of what they are, but because of what they contain - subject steel nails.  Importation of those nails provides the basis for this case; in fact, it was the reason Target sought a scope ruling to begin with.  It is not surprising that household tool kits are outside the scope of an order related to steel nails.  The nails themselves, however, are subject to the <u>Final Order</u>, and it is left only to determine

whether the <u>Final Order</u>, or some other lawful source, provide a basis for excluding them because they are packaged in tool kits.

As already stated, the <u>Final Order</u> provides no such basis. While the <u>Final Order</u>'s unambiguous inclusion of the nails would normally be the end of the Court's analysis, the role Commerce's prior scope rulings may have played in its decision should be reviewed.  This scrutiny is warranted because it is unclear how the procedures described in those rulings operate in conjunction with the language of the final orders, and an issue exists regarding whether Commerce is authorized to use such procedures at all.

## 2.  Prior Scope Rulings

As relied on by the parties during the scope inquiry, Commerce has previously considered scope ruling requests involving mixed-media items.  The relevant rulings all involved similar circumstances: an item or set being imported included a subject good, but the antidumping order at issue was silent regarding coverage of the item or set.  In response to these circumstances, Commerce has adopted two different tests utilizing two different sets of factors allowing it to determine the product under examination.  The test used is normally outcome determinative as to whether Commerce ultimately finds coverage of the subject good.

In the scope rulings relied on by Target, Commerce focused its inquiry on the entire mixed-media item or set rather than the subject good alone and found no scope coverage. <u>See</u> <u>Certain Lined Paper Products from the People's Republic of China - Davis Group of</u>

Companies Corp. Scope Ruling Request, (Feb. 21, 2008) (concluding that padfolios containing subject lined paper pads were outside the scope of the order) ("Davis Scope Ruling"); Final Scope Ruling - Antidumping Duty Order on Certain Lined Paper Products from the People's Republic of China, Request by Avenues in Leather, Inc., (May 8, 2007) (same); Final Scope Ruling - Antidumping Duty Order on Certain Cased Pencils from the People's Republic of China (PRC) - Request by Fiskars Brands, Inc., (June 3, 2005) (concluding that compasses containing subject pencils were outside the scope of the order) ("Fiskars Scope Ruling"); Final Scope Ruling - Antidumping Duty Order on Certain Cased Pencils from the People's Republic of China (PRC) - Request by Target Corporation, (Mar. 4, 2005) (concluding that art sets containing subject pencils and other non-subject art supplies were outside the scope of the order) ("Clip N' Color Scope Ruling").

In these scope rulings, Commerce considered the item or set as a whole after concluding that the subject good contained therein was "not a substantial component of the set," Clip N' Color Scope Ruling at 5, was "consumed" during use, Fiskars Scope Ruling at 6, or could be "replaced" with another, presumably non-subject, good. Davis Scope Ruling at 6.   Notably, Commerce identified none of these factors (i.e., minor component, consumable, replaceable) in the language of the antidumping order at issue.

In the scope rulings relied on by Mid Continent Nail, Commerce

decided to examine the subject good regardless of the other items
with which it was packaged, and concluded that the subject good
remained subject to the antidumping order.  See Final Scope Ruling:
Antidumping Duty Order on Certain Tissue Paper from the People's
Republic of China, (Sept. 19, 2008) (concluding that tissue paper
contained in a gift bag set was subject to the order) ("Walgreen
Scope Ruling"); Final Scope Ruling on the Request by Texsport for
Clarification of the Scope of the Antidumping Duty Order on
Porcelain-on-Steel Cooking Ware from the People's Republic of
China, (Aug. 8, 1990) (concluding that porcelain-on-steel cookware
imported as part of a camping set was subject to the order)
("Texsport Scope Ruling").

      In the Walgreen Scope Ruling, Commerce analyzed subject tissue
paper contained in gift bags and concluded that the tissue paper
was "not a component of a unique set but merely subject merchandise
packaged with non-subject merchandise."  Walgreen Scope Ruling at
11.  Relying on the Texsport Scope Ruling, Commerce stated that it
evaluated the subject tissue paper apart from the other items with
which it was packaged because the items "could be used
independently of one another and at different times."  Id.
Commerce also stated that "[b]ecause the tissue paper at issue
included in these sets can be used independently, the question of
whether or not the tissue paper is 'significant' with regard to the
other products in the gift bag sets . . . is irrelevant to the
Department's analysis in this case."  Id. at 11-12.

In this case, Commerce appears to have followed the rulings cited by Target.  However, if Commerce had instead applied the Walgreen Scope Ruling approach, it is likely that the subject nails would have been examined and found within the Final Order's scope because they can be "used independently" of the other items in the tool kits and "at different times."  In fact, the nails appear to better satisfy these conditions than did the tissue paper at issue in Walgreen.

Such inconsistency in agency procedure is not permitted.  It is true that Commerce has not given a general definition or test for what constitutes a mixed-media set, and that Commerce must issue each scope ruling based upon the facts and circumstances of the specific case before it.  See Walgreens, 620 F.3d at 1355.  However, to the extent that Commerce develops a procedure for defining the particular product to be examined in scope proceedings, such procedure must remain consistent and any deviations must be explained.  See SFK USA, Inc. v. United States, 630 F.3d 1365, 1373 (Fed. Cir. 2011) ("When an agency changes its practice, it is obligated to provide an adequate explanation for the change.").

An additional problem exists when Commerce uses criteria other than the antidumping order to determine the particular product under examination in scope proceedings.  Specifically, Commerce has cited no authority allowing it to consider factors other than the Final Order or the provisions of 19 C.F.R. § 351.225 when defining

the particular product to be examined in scope inquiries.  However, statutory authority is necessary when an agency takes action to administer a statutory schemes over which it has oversight.  See Timken Co. v. United States, 354 F.3d 1334, 1341 (Fed. Cir. 2004) (citing Chevron U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837, 842-43 (1984)).

This much is clear: a party seeks a scope ruling in a mixed-media case because it is importing an item containing goods subject to an antidumping order.  As stated above, it is Commerce, and not the party seeking the scope ruling, that decides where the scope inquiry should be focused.  See Walgreen Co. of Deerfield, 620 F.3d at 1355.  The factors to be utilized in making this decision are not expressly provided for in 19 C.F.R. § 351.225, but the question itself remains governed by the principle that in scope proceedings, Commerce may interpret its orders but is not at liberty to change them. See Ericsson GE Mobile Commc'ns, 60 F.3d at 782.  Therefore, regardless of the test employed, examining mixed-media items or sets instead of the subject goods they contain when such an approach is not warranted by the antidumping order may not be in accord with the law.  However, since the Final Scope Ruling provided no statutory, regulatory, or other legal basis for this practice, the Court concludes that remand on this issue is appropriate so that Commerce can identify not only a test it will employ consistently, but the legal justification for employing such a test at all.

Court No. 10-00247                                                    Page 22

### CONCLUSION

The Court concludes that the <u>Final Scope Ruling</u> is unsupported by substantial evidence and otherwise not in accord with the law. Commerce failed to articulate the reasons it examined the tool kits instead of the nails contained therein.   Commerce also gave inadequate consideration to the language of the <u>Final Order</u> and undertook an analysis under 19 C.F.R. §351.225(k)(2) prematurely. Furthermore, to the extent Commerce relied on procedures set forth in its prior scope rulings in deciding to examine the tool kits rather than the nails contained therein, it failed to articulate the factors of the test it followed or the legal authorization for employing such a test.

In accordance with the above, this case is remanded to Commerce for further proceedings consistent with this opinion.


                                             <u>  /s/ NICHOLAS TSOUCALAS  </u>
                                                 **Nicholas Tsoucalas**
                                                   **Senior Judge**


**Dated: May 17, 2011**
       **New York, New York**

Slip Op. 11-55

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**Before: Nicholas Tsoucalas, Senior Judge**

| | |
|---|---|
| MID CONTINENT NAIL CORPORATION, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| UNITED STATES, | : |
| | :   Court No.: 10-00247 |
| Defendant, | : |
| | : |
| and | : |
| | : |
| TARGET CORPORATION, | : |
| | : |
| Defendant-Intervenor. | : |
| | : |

**ORDER**

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in accordance with said decision, it is hereby

**ORDERED, ADJUDGED, and DECREED** that the Motion for Judgment on the Agency Record filed by Plaintiff, Mid Continent Nail Corporation, is granted; and it is further

**ORDERED** that the United States Department of Commerce's ("Commerce") <u>Final Scope Ruling - Certain Steel Nails from the People's Republic of China ("PRC"), Request by Target Corporation</u> (Dep't Commerce Aug. 10, 2010) is remanded to the agency for further proceedings.  First, Commerce should explain whether, in focusing its scope examination on tool kits containing subject nails, it relied on a procedure or set of factors articulated in its prior scope rulings and distinct from the final antidumping order or the provisions of 19 C.F.R. § 351.225.  If so, Commerce should articulate that procedure or set of factors, as well as the statutory, regulatory, or other legal source granting it authority to employ such procedure or set of factors; and it is further

**ORDERED** that Commerce shall reconsider its determination of Target Corporation's December 11, 2009 Scope Ruling Request in light of the standard set forth by the Court in the accompanying

opinion and the findings regarding the record set forth therein;
and it is further

**ORDERED** that the remand results are due within sixty (60) days
from the date that this opinion is issued.  Any responses or
comments are due within thirty (30) days from the date the results
are filed.  Any rebuttal comments are due within fifteen (15) days
from the date any responses are filed.
Commerce for further proceedings consistent with this opinion.


                                    /s/ NICHOLAS TSOUCALAS
                                   **Nicholas Tsoucalas**
                                     **Senior Judge**



**Dated: May 17, 2011**
       **New York, New York**