**Slip Op. 12-31**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**Before: Nicholas Tsoucalas, Senior Judge**

---

| | |
|---|---|
| MID CONTINENT NAIL CORPORATION, | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| UNITED STATES, | : |
| | : Court No.: 10-00247 |
| Defendant, | : |
| | : |
| and | : |
| | : |
| TARGET CORPORATION, | : |
| | : |
| Defendant-Intervenor. | : |

---

**OPINION**

**Held:** Redetermination upon remand by the Department of Commerce was
not supported by substantial evidence nor in accord with the law.

                                    Dated: March 7, 2012

    Wiley Rein, LLP, (Adam H. Gordon, Lori E. Scheetz, Robert E.
DeFrancesco, III) for Mid Continent Nail Corporation, Plaintiff.

    Tony West, Assistant Attorney General; Jeanne E. Davidson,
Director, Commercial Litigation Branch, Civil Division, United States
Department of Justice, Patricia M. McCarthy, Assistant Director,
Commercial Litigation Branch, Civil Division, United States
Department of Justice, (David D'Alessandris); Brian Soiset, Office
of Chief Counsel for Import Administration, United States Department
of Commerce, Of Counsel, for the United States, Defendant.

    Jochum, Shore, & Trossevin, PC, (Marguerite E. Trossevin and
James J. Jochum) for Target Corporation, Defendant-Intervenor.


    **TSOUCALAS, Senior Judge:**  This matter comes before the Court

upon the Final Results of Redetermination Pursuant to Remand Order

("Redetermination") issued by the United States Department of

Commerce ("Commerce") on October 17, 2011.  Comments in opposition have been filed by Plaintiff, Mid Continent Nail Corporation ("Mid Continent Nail") and in support by Defendant-Intervenor, Target Corporation ("Target").  For the reasons set forth below, the Court concludes that the Redetermination is not supported by substantial evidence and is otherwise not in accord with law, and remands this matter for proceedings consistent with this opinion.

BACKGROUND

The Court issued an opinion remanding this matter on May 17, 2011, in which the facts underlying this case are fully set forth. See Mid Continent Nail Corp. v. United States, 35 CIT __, 770 F. Supp. 2d 1372 (2011).  In sum, Commerce had determined that steel nails otherwise subject to an antidumping order ("Final Order")[1] were not within the Final Order's scope when imported in household tool kits.  See Final Scope Ruling - Certain Steel Nails from the People's Republic of China ("PRC"), Request by Target Corporation (Aug. 10, 2010), Public Rec. 27, ("Final Scope Ruling").  Before making this ultimate determination, Commerce decided to focus its scope inquiry not on the nails themselves, but on the tool kits within which the nails were imported.  Final Scope Ruling at 5.  After subjecting the tool kits to analysis under 19 C.F.R. § 351.225(k)(2), Commerce concluded that they were not subject to the Final Order.

Mid Continent Nail sought review, and the Court concluded that

---

[1] Notice of Antidumping Duty Order: Certain Steel Nails from the People's Republic of China, 73 Fed. Reg. 44,961 (Aug. 1, 2008).

Commerce's determination was unsupported by substantial evidence and otherwise not in accord with law.  First, the Court found that Commerce failed to address evidence from the antidumping investigation record indicating that the antidumping Petitioners intended their proposed scope language to include all certain steel nails, whether imported with non-subject merchandise or not.  Mid Continent Nail, 35 CIT at __, 770 F. Supp. 2d at 1379.

Next, the Court found that Commerce had failed to sufficiently explain its decision to analyze the tool kits rather than the nails. Id.  The Court concluded that this decision by Commerce was not supported by the Final Order, which unambiguously includes the nails in question and grants no exception based on packaging or manner of importation.  Id. at 1381.  The Court also noted that Commerce has, in the past, employed inconsistent tests in deciding whether to analyze a mixed-media item or set[2] on its own as a unique product or the subject goods it contains.  Id. at 1382.

Additionally, because it is well-established that Commerce may only interpret, and not change, its antidumping orders during scope inquiries, Ericsson GE Mobile Commc'ns, Inc. v. United States, 60 F.3d 778, 782 (Fed. Cir. 1995), the Court stated that any test leading Commerce to treat a subject good as a separate, unique product when such an approach was not warranted by the antidumping order was possibly unlawful.  Mid Continent Nail, 35 CIT at __, 770

---

[2] As noted in Mid Continent Nail, a mixed-media item is an item containing both subject and non-subject merchandise. Id. at 1375.

F. Supp. 2d at 1382.   The Court therefore remanded this matter to
Commerce so that it could, first, identify the legal authorization
for employing such a mixed-media test, and second, clarify the test
factors it would apply consistently.

On remand, Commerce stated that its authority to issue scope
rulings derives generally from section 731 of the Tariff Act of 1930,
which states that Commerce shall impose antidumping duties on "a
class or kind of foreign merchandise."   Redetermination at 2; see
also 19 U.S.C. § 1673.[3]   Commerce also relied on its inherent
authority to define the scope of its antidumping orders.
Redetermination at 2 (citing Duferco Steel, Inc. v. United States,
296 F.3d 1087, 1089-90 (Fed. Cir. 2002)).   In exercising this
authority, Commerce must fashion scope provisions in "general terms,"
and it therefore has authority to inquire into whether certain goods
are included within the scope, and then issue scope rulings.   Id. at
3 (citing 19 C.F.R. § 351.225(a)).   Commerce continued that

> neither [it] nor domestic petitioners can predict every
> permutation of a product that might be imported into the
> United States at a future time. . . . If [Commerce] were
> required to address every possible permutation of a
> product in an order, and [Commerce] were strictly limited
> to excluding only those products specifically identified
> and excluded in an order, then there would be little need
> for scope proceedings.

Id. at 3.

---

[3] All further citations to the Tariff Act of 1930 are to the
relevant provisions of Title 19 of the United States Code, 2006
edition.

Commerce stated that, in addition to issuing scope rulings, the statutory and regulatory authority set forth above also permits it "to employ an analysis to determine whether its scope analysis should focus on the entire product or only on certain specific components of the imported product." Id. at 4.  Commerce asserted that this authority has been upheld by a number of federal appellate court decisions.  It relied on Walgreen Co. of Deerfield v. United States, 620 F.3d 1350, 1355 (Fed. Cir. 2010), for the authority to exercise discretion in focusing its scope inquiries and to determine whether a mixed-media item is a unique product. Additionally, Commerce relied on Crawfish Processors Alliance v. United States, 483 F.3d 1358 (Fed. Cir. 2007), in asserting that it has authority to determine when a subject good has been transformed or subsumed into a new, non-subject good prior to importation.  Id. at 5 (citing Crawfish, 483 F.3d at 1363-64).

Its authority thus set forth, Commerce provided a four factor test it would employ to determine the focus of its scope inquiries when faced with a subject good imported as part of a mixed-media item.  Specifically, Commerce will consider:

> (1)the practicability of separating the component merchandise for repackaging or resale; (2) the value of the component merchandise as compared to the value of the product as a whole; (3) the ultimate use or function of the component merchandise relative to the ultimate use or function of the mixed-media set as a whole; and (4) any other relevant factors that may arise on a product-specific basis.

Id. at 8.

Upon applying this test to the goods at issue in this case, Commerce determined that the proper focus of its scope inquiry was the tool kits within which the nails are packaged.  Commerce then analyzed the tool kits under the factors set forth in 19 C.F.R. § 351.225(k)(1), and concluded that they were outside the scope of the Final Order.

## JURISDICTION

The Court has jurisdiction over this review pursuant to 19 U.S.C. § 1516a(a)(2)(B)(vi) (2006), and 28 U.S.C. § 1581(c) (2006).

## STANDARD OF REVIEW and LEGAL STANDARD

Similar to the Court's review of the Final Scope Ruling, the Redetermination will be upheld unless it is "unsupported by substantial evidence on the record, or otherwise not in accord with law."  19 U.S.C. § 1516a(b)(1)(B)(i).  "The court gives significant deference to Commerce's interpretation of its own orders, but a scope determination is not in accordance with the law if it changes the scope of an order or interprets an order in a manner contrary to the order's terms."  Allegheny Bradford Corp. v. United States, 28 CIT 830, 842, 342 F. Supp. 2d 1172, 1183 (2004).

## ANALYSIS

Commerce is correct in its assertions that an antidumping duty can only be imposed on a "class or kind of foreign merchandise," that authority to define the scope of this class or kind of merchandise rests with Commerce, and that general language must be employed to accomplish this end.  The law is clear, however, that

once a final antidumping order is issued, Commerce's role in defining the scope of that order is finished, and it then becomes the interpreter of the order.  The test set forth by Commerce in the <u>Redetermination</u> invites analysis of the product in question rather than interpretation of the <u>Final Order</u>'s scope, but the law upon which Commerce relies does not support such a variance from the well-established primacy of a final order.

First, as made clear by the <u>Redetermination</u>, there is no statute or regulation that squarely addresses the question of when Commerce should analyze a subject good within a mixed media item on its own, and when it should analyze the mixed-media item as a unique product.  The statutes cited by Commerce simply authorize it to undertake scope inquiries and issue scope rulings.

This authority, however, must be exercised in light of the controlling case law cited above saying that Commerce is free to interpret its orders, but may not change them.  See <u>Ithaca College v. N.L.R.B.</u>, 623 F.2d 224, 228 (2d Cir. 1980) ("The position of any administrative tribunal whose hearings, findings, conclusions and orders are subject to direct judicial review is much akin to that of a United States District Court, . . . and as must a district court, an agency is bound to follow the law of the Circuit."). (Internal citation omitted).

Commerce also stretched the holding of the court in <u>Walgreen</u> beyond what the facts of that case warranted.  In <u>Walgreen</u>, the party seeking the scope ruling argued that because its petition

identified the item for review as the entire mixed-media set,
Commerce did not have the discretion to focus its inquiry on the
subject good the set contained.  Walgreen, 620 F.3d at 1354-55.
The Court of Appeals affirmed that Commerce was not bound by the
petition, and that it had authority to decide how the scope inquiry
would be focused.  Id. at 1355.  However, the court in Walgreen
never stated that this authority abrogated Commerce's obligation to
exercise its authority in light of the final order in question.
Indeed, the court reaffirmed that the basis of any scope proceeding
is the language of the antidumping order.  See id. at 1357 ("This
court has made clear that it is the language of Commerce's final
order that defines the scope of the order . . . .").

    The Court also concludes that the Crawfish decision does not
support the action taken by Commerce here.  In Crawfish, the court
affirmed Commerce's conclusion that subject crawfish tail meat had
undergone a substantial transformation as an ingredient of
etouffee, and could "no longer be considered freshwater crawfish
tail meat."  Crawfish, 483 F.3d at 1363.  This standard for
substantial transformation is not met in this case.  In Crawfish,
the subject tail meat was an ingredient in a stew-like etouffee
that only needed to be heated to be eaten, and the record supported
Commerce's conclusion that the other ingredients in the stew had
penetrated the tail meat, permanently altering its flavor.  Id.
The nails in question here were packaged in a tool kit, but they
were still nails that were going to be used as nails by the

purchasers of the tool kits.  The nails simply did not experience a <u>Crawfish</u>-like substantial transformation by merit of their inclusion in the tool kits.

Next, in reliance on the statement in 19 C.F.R. § 351.225(a) that antidumping orders must be written in "general terms," Commerce argues that it cannot "predict every permutation of a product that might be imported into the United States at a future time." <u>Redetermination</u> at 3.  Putting aside for a moment this concern as a general matter, the record in this case indicates that no predictive powers were required to know that subject nails would be imported in mixed-media sets.  During the antidumping investigation, i.e., before the <u>Final Order</u> was issued, an importer of nail gun sets including subject nails sought a determination that its sets were outside the proposed scope language.  <u>See</u> <u>Mid Continent Nail</u>, 35 CIT at __, 770 F. Supp. 2d at 1376-77.  In response, the Petitioners stated their belief that their proposed scope language, which was incorporated in all relevant parts in to the <u>Final Order</u>, included "nails exhibiting the physical characteristics described in the written scope description, whether imported alone or as part of a set of goods including non-scope merchandise." <u>Mid Continent Nail</u>, 35 CIT at __, 770 F. Supp. 2d at 1377.  The Petitioners even stated that if Commerce believed clarifying language was necessary, they had no objection to Commerce including it.  <u>Id.</u>  Although Commerce was thereby expressly made aware of the fact that the Petitioners and importers

had opposing views on whether the scope language covered subject nails imported in sets, Commerce never addressed the issue in either its preliminary determination or the <u>Final Order</u>.  <u>Id.</u>  It may not now rely on the "general terms" provision of 19 C.F.R. § 351.225(a) to attempt a new analysis and import into the <u>Final Order</u> language it did not put there initially.

Looking beyond the specific facts of this case, the Court notes that inclusion of subject goods in mixed-media items should come as no surprise to Commerce or petitioners and respondents in antidumping investigations.  There is a long history of litigation over whether subject goods imported with non-subject goods remain subject to the final order.[4]  Recognizing this possibility, and addressing it in the final order, does not require the ability to predict a product's every permutation, as lamented by Commerce in the <u>Redetermination</u>.  Rather, it would move the mixed-media item discussion to the investigation, a preferable alternative since this is when Commerce has the greatest freedom to exercise its expertise in properly defining its orders' scopes.  While no one expects antidumping orders to address every possible permutation, addressing easily foreseeable areas of dispute like this one provides greater certainty for those subject to the order, and

---

[4] The Court previously discussed a number of prior scope rulings in which Commerce, dealing with a final order silent on the matter, had to determine whether a subject good remained subject when imported in a mixed-media item or set with non-subject goods.  <u>See</u> <u>Mid Continent Nail</u>, 35 CIT at __, 770 F. Supp. 2d at 1381-82.

**Court No. 10-00247**                                          **Page 11**

preserves  resources  not  only  for  those  same  parties,  but  for

Commerce as well.

### CONCLUSION

The law cited in the <u>Redetermination</u> does not grant Commerce

authority  to  avoid  the  well-established  principle  that  after  a

final  antidumping  order  is  issued,  that  order  can  be  interpreted,

but  not  changed.   The  factors  set  forth  by  Commerce  to  help  it

decide how to focus its scope inquiry expand impermissibly beyond

interpretation of a final order into new analysis of goods better

undertaken  during  the  investigation.   The  nails  in  question  here

are  unambiguously  subject  to  the  <u>Final Order</u>,  and  there  is  no

support in the law or the record for concluding otherwise.

In  accordance  with  the  above,  this  case  is  remanded  to

Commerce for further proceedings consistent with this opinion.

                                        ___/s/ NICHOLAS TOUCALAS___
                                            **Nicholas Tsoucalas**
                                              **Senior Judge**


**Dated: March 7, 2012**
       **New York, New York**

**Slip Op. 12-31**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**Before: Nicholas Tsoucalas, Senior Judge**

| | |
|---|---|
| MID CONTINENT NAIL CORPORATION, | : |
| Plaintiff, | : |
| v. | : |
| UNITED STATES, | : |
| | : Court No.: 10-00247 |
| Defendant, | : |
| and | : |
| TARGET CORPORATION, | : |
| Defendant-Intervenor. | : |

**ORDER**

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in accordance with said decision, it is hereby

**ORDERED, ADJUDGED, and DECREED** that this matter is remanded to the United States Department of Commerce for further proceedings consistent with the Court's Opinion.

        /s/ NICHOLAS TOUCALAS
        **Nicholas Tsoucalas**
        **Senior Judge**

**Dated: March 7, 2012**
      **New York, New York**